UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| UNITED STATES OF AMERICA, | **REPORT,** |
|  | **RECOMMENDATION** |
| v. | **AND ORDER** |
|  |  |
| JONATHAN SINGLETARY, | 18-CR-00153(LJV)(JJM) |
|  |  |
| Defendant. |  |

_____

Defendant Jonathan Singletary is charged in a two-count Indictment [1][1] with obstructing justice for allegedly testifying falsely and evasively as a trial witness, in violation of 18 U.S.C. §§1503(a) and 1512(c)(2).[2]  Before the court are defendant's motion to dismiss the Indictment pursuant to Fed. R. Crim. P. ("Rule") 12(b)(1), "or in the alternative to dismiss those allegations of obstruction which would not withstand a Rule 29 . . . [or] 33 motion to dismiss as a matter of law" [16], defendant's motion for a bill of particulars [18], p. 5 of 13 (CM/ECF),[3] and the government's cross-motion for reciprocal discovery (government's Response [21], pp. 12-13), all of which have been referred to me by District Judge Lawrence J. Vilardo for initial consideration [3].  Having reviewed the parties' submissions [16, 17, 18, 20, 21, 22], and heard oral argument on October 31, 2018 [23], defendant's motion for a bill of particulars is denied, the government's cross-motion is granted, and I recommend that defendant's motion to dismiss be denied.

---

[1]   Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

[2]   The Indictment also identifies the penalty provisions associated with each count.

[3]   At the October 31, 2018 oral argument, defendant agreed that all other portions of his omnibus pretrial motion [18] have been resolved.

## BACKGROUND

The Indictment arises from defendant's November 29, 2017 trial testimony in United States v. Ernest Green, Rodshaun Black, *et al.*, 12-CR-83(WMS). It alleges that preceding that testimony, defendant gave a sworn statement to the Buffalo Police in January 2010 concerning the Jabril Harper murder, and then in December 2011 gave similar grand jury testimony, as well as testimony concerning the kidnapping and robbery of Morris Singer, which resulted in the return of the Indictment in United States v. Ernest Green, Rodshaun Black, *et al.*, 12-CR-83(WMS) that included charges related to the Harper and Morris incidents. Indictment [1], Introduction, ¶¶3-4.

Prior to defendant's trial testimony, he allegedly twice informed the Assistant United States Attorney that his grand jury testimony was truthful. Id., Introduction, ¶¶5-6. Yet during his trial testimony, defendant allegedly "denied the truth of several matters to which he previously testified before the grand jury and testified that his prior statement to the Buffalo Police Department consisted of information he was told to say by the detectives who interviewed him.". Id., Introduction, ¶7. The Indictment identifies the following eight instances of allegedly false and evasive testimony by defendant at the trial:

> "(i) denied ever speaking with Rodshaun Black about the Jabril Harper murder; (ii) denied knowing Rodshaun Black's mother; (iii) denied discussing his relationship with Rodshaun Black's mother with an Federal Bureau of Investigation Special Agent and an Assistant United States Attorney earlier in the day prior to his trial testimony; (iv) denied knowing Rodshaun Black's co-defendant John Coronado; (v) denied knowing Rodshaun Black's associate Jeffrey Early; (vi) denied that Rodshaun Black admitted to the defendant that Black used the same .45 caliber gun to shoot Jabril Harper that Black used to shoot the floor at 115 Elmhurst, Buffalo, New York; (vii) denied that he learned about Jabril Harper's murder directly from Rodshaun Black; and (viii) testified that his prior statement to the Buffalo Police Department consisted of information he was told to say by the detectives who interviewed him." Id., Count 1, ¶2.

Based on this alleged conduct, Count 1 of the Indictment charges defendant with violating 18 U.S.C. §1503(a), which prohibits "corruptly . . . endeavor[ing] to influence, obstruct, or impede, the due administration of justice". Likewise, Count 2 of the Indictment charges defendant with violating 18 U.S.C. §1512(c)(2), which likewise prohibits "corruptly . . . obstruct[ing], influenc[ing], or imped[ing] any official proceeding, or attempt[ing] to do so".

## DISCUSSION

**A.    Defendant's Motions**

### 1.    Motion to Dismiss the Indictment Based on the Sufficiency of the Evidence

"The dismissal of an indictment is an 'extraordinary remedy' reserved only for extremely limited circumstances implicating fundamental rights." United States v. De La Pava, 268 F.3d 157, 165 (2d Cir. 2001). That is because "[a]n indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is enough to call for trial of the charge on the merits." Costello v. United States, 350 U.S. 359, 363 (1956). See United States v. Coffey, 361 F. Supp. 2d 102, 111 (E.D.N.Y. 2005) ("the validity of an indictment is tested by its allegations, not by whether the Government can prove its case").

Defendant is "not seeking to have the indictment dismissed for facial insufficiency". Defendant's Reply [22], p. 1. Instead, he argues that since all of the government's evidence of his alleged obstruction is based on his trial testimony, the issue of whether his trial testimony was false and evasive can be resolved as a matter of law by review of that testimony. Id., p. 2; defendant's Motion [16], p. 3. However, he concedes that "there does not appear to be much precedent for the unique circumstances presented". Defendant's Reply [22], p. 2.

Generally, "summary judgment does not exist in federal criminal procedure", since "the sufficiency of the evidence is not appropriately addressed by" a pretrial motion to dismiss. United States v. Sampson, 898 F.3d 270, 282 (2d Cir. 2018); United States v. Parker, 165 F.Supp.2d 431, 458 (W.D.N.Y. 2001). It is only in the "extraordinarily narrow" circumstance when the government offers "what can fairly be described as a full proffer of the evidence it intends to present at trial", that the sufficiency of the evidence may be tested. Sampson, 898 F.3d at 282.

The government has not made such a proffer, and does not concede that its evidence will be limited to the trial transcript. It states that it has not provided defendant with all of the grand jury testimony, and argues that he is "drawing conclusions based on only the trial testimony and not the individual fact witnesses who testified at the grand jury and who will testify at trial". Government's Response [20], pp. 7-8. At oral argument, defendant's counsel argued that he believes (and is willing to concede for purposes of the motion) that the additional witnesses or evidence that the government will introduce at trial will relate solely to whether defendant acted with corrupt intent, not whether his actual testimony could be considered obstructive  - *i.e.*, false and evasive.   Defendant's prediction may or may not ultimately be correct, but the court "cannot approve dismissal of an indictment on the basis of predictions as to what the trial evidence will be", United States v. DeLaurentis, 230 F.3d 659, 661 (3d Cir. 2000), and cannot force the government to make a proffer of its trial evidence. *See* Sampson, 898 F.3d at 282.

In any event, I disagree with defendant that the trial transcript disproves, as a matter of law, that he falsely and evasively testified at trial as alleged in the Indictment ([1], Count 1, ¶¶2(i)-(viii)).  For example, at oral argument, defendant's counsel argued that the trial

transcript demonstrates that defendant never denied speaking with Rodshaun Black about the Jabril Harper murder. Id., Count 1, ¶2(i). Although everyone agrees that the questioning of defendant at trial could have been more clear, there are at least some portions of the transcript which support the Indictment's allegation that defendant denied (or at minimum was evasive about) speaking with Rodshaun Black about the Jabril Harper murder. *See, e.g.*, [16-1], p. 12 of 114 (CM/ECF) ("Q. Do you recall telling me that Rodshaun Black had made statements to you about his participation in the murder of Jabril Harper? A. No"); pp. 19-20 of 114 ("Q. Did you tell the grand jury that Rodshaun Black made admissions to you about shooting Jabril Harper? . . . [A.] No"); pp. 67-68 of 114 (Q. "[Y]ou testified earlier that law enforcement gave you the only information you had about the Jabril Harper homicide, correct? A. Yes, yes"). Resolution of whether or not the charges in the Indictment are supported by the trial transcript and other evidence presented at trial must await the jury's verdict or a Rule 29 motion. To hold otherwise "risks invading 'the inviolable function of the jury' in our criminal justice system". Sampson, 898 F.3d at 281.

Defendant further argues that the Indictment's allegation that he "testified that his prior statement to the Buffalo Police Department consisted of information he was told to say by the detectives who interviewed him" ([1], Count 1, ¶2(viii)) is inconsistent with his testimony that the statement was comprised of a "little bit" from the law enforcement officers present and himself ([16-1], p. 58 of 114 (CM/ECF)). Defendant's Memorandum of Law [17], pp. 18-19. Even if that were so, defendant acknowledges that this may not be the sole testimony in support of that allegation. Id. ("[i]f this is the sole support for this charge then . . . it must be dismissed"). Therefore, this argument is also premature.

Even if his alleged testimony was false and evasive as alleged in the Indictment, defendant argues that dismissal is warranted because "[m]ost of the allegations involve testimony on inconsequential, collateral matters which would not possibly influence the criminal trial". Defendant's Motion [16], p. 5.  Since 18 U.S.C. §1503(a) (Count 1) and 18 U.S.C. §1512(c)(2) (Count 2) penalize endeavoring or attempting to obstruct, see United States v. Martinez, 862 F.3d 223, 238 (2d Cir. 2017),  the "subjective materiality or influential outcome of the [endeavor] is irrelevant" to an obstruction of justice charge.  United States v. Scali, 2018 WL 604852, *3 (S.D.N.Y. 2018).  However, the endeavor must have "the natural and probable effect of interfering with the due administration of justice".  United States v. Aguilar, 515 U.S. 593, 599 (1995).[4]  In other words, "[t]he action taken by the accused must be with an intent to influence judicial . . . proceedings; it is not enough that there be an intent to influence some ancillary proceeding, such as an investigation independent of the court's or grand jury's authority." Id. See Martinez, 862 F.3d at 238 ("to permit conviction under either § 1512(c)(2) or § 1503 . . . the defendant's acts [need not] be successful in impeding or obstructing justice . . .  so long as his acts had the natural and probable consequence of interfering with an official proceeding that was foreseeable even if not then pending").

Hence, in Aguilar the Supreme Court held that false statements made to an FBI investigator during the pendency of a grand jury investigation did not fall under the obstruction statute, where the defendant was aware of the grand jury investigation, but not of the fact that his false statements would be provided to the grand jury. 515 U.S. at 599-601.  The court explained that "[s]uch conduct . . . falls on the other side of the statutory line from that of one

---

[4]   This requirement applies to both 18 U.S.C. §§1503(a) and 1512(c)(2).  See United States v. Desposito, 704 F.3d 221, 230 (2d Cir. 2013).

who delivers false documents or testimony to the grand jury itself. Conduct of the latter sort all but assures that the grand jury will consider the material in its deliberations." Id. at 601.

Defendant relies heavily on United States v. Bonds, 784 F.3d 582, 583 (9th Cir. 2015) (per curiam), which is supportive of a narrower reading of the 'natural and probable" nexus requirement set forth in Aguilar. Defendant's Memorandum of Law [17], pp. 6-12.  There, former baseball player Barry Bonds was charged with obstruction of justice arising from his testimony before the grand jury. 784 F.3d at 583.   In reversing his conviction, the Ninth Circuit, held that the grand jury testimony that formed the basis for his conviction "did not have the capacity to divert the government from its investigation or influence the grand jury's decision whether to indict anyone. . . . An irrelevant or wholly non-responsive answer says nothing germane to the subject of the investigation, whether it's true or false." Id. at 585-86.

The government failed to address Bonds in its response.  For the first time at oral argument, it argued that Bonds was neither controlling nor followed by other circuits. Nevertheless, even if Bonds was controlling, without the benefit of the entire trial transcript or the government's full proffer of trial evidence, it is not possible to determine whether any of the alleged false and evasive testimony could have had the natural and probable effect of interfering with the trial.  Therefore, I recommend that defendant's motion to dismiss be denied.


**2.    Motion to Dismiss for Vindictive Prosecution**

Defendant argues that "[t]here is something so unseemly about this prosecution . . . that the most likely conclusion to be drawn is vindictive prosecution", thereby warranting dismissal of the Indictment.  Defendant's Memorandum of Law [17], p. 16.  In support of that argument, he points to several factors. First, he questions why, if the government

believed defendant testified falsely or refused to answer questions, he was not charged with perjury or contempt. Id., p. 17. Second, he notes that the charges of the Indictment, which expose him to a potential life sentence, are excessive. Id., pp. 17-18. Finally, he suggests that the charges may be motivated by the fact that he "seemingly embarrassed the Government with a response to question which specifically asked him to describe promises and threats made to him by two Assistant U.S. Attorneys". Id., p. 18.

"[T]he decision as to whether to prosecute generally rests within the broad discretion of the prosecutor . . . and a prosecutor's pretrial charging decision is presumed legitimate". United States v. Sanders, 211 F.3d 711, 716 (2d Cir. 2000). An indictment is subject to dismissal only "if there is a finding of 'actual' vindictiveness, or if there is a presumption of vindictiveness that has not been rebutted by objective evidence justifying the prosecutor's action". United States v. Johnson, 171 F.3d 139, 140 (2d Cir. 1999). To establish actual vindictiveness, "the defendant must show that (1) the prosecutor harbored genuine animus toward the defendant, or was prevailed upon to bring the charges by another with animus such that the prosecutor could be considered a 'stalking horse,' and (2) [the defendant] would not have been prosecuted except for the animus". Sanders, 211 F.3d at 716–17. Such a claim "requires 'direct' evidence, such as evidence of a statement by the prosecutor, which is available 'only in a rare case'". Johnson, 171 F.3d at 140. As the government argues, defendant "has set forth no direct evidence of vindictiveness" or "evidence that but for [its] alleged genuine animus against him, he would not have been prosecuted". Government's Response [20], p. 8.

Nor has defendant demonstrated a presumption of vindictiveness, which "arises when the circumstances of the case create a 'realistic likelihood' of prosecutorial vindictiveness". Johnson, 171 F.3d at 141. While "[p]rosecutorial vindictiveness claims are for

all practical purposes limited to charges added after a trial" United States v. Rooney, 866 F.2d 28, 33 (2d Cir. 1989), the charges here fall outside that category. *See* Moreno-Godoy v. United States, 2014 WL 1088300, *11 n. 4 (S.D.N.Y. 2014) ("Godoy's claim does not raise an issue of 'presumed prosecutorial vindictiveness,' which 'only applies when a prosecutor lodges additional charges after a trial'"). Therefore, I recommend that this motion be denied.

### 3. Motion for a Bill of Particulars

Rule 7(f) "permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense". United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987). "A bill of particulars is required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." United States v. Walsh, 194 F.3d 37, 47 (2d Cir. 1999). "[T]he burden is upon defendants to show that non-disclosure of the requested particulars would lead to prejudicial surprise at trial or would adversely affect defendants' rights". United States v. Duarte, 2014 WL 29366, *1 (W.D.N.Y. 2014).

"In deciding a motion for a bill of particulars, the important question is whether the information sought is necessary, not whether it is helpful." United States v. Conley, 2002 WL 252766, *4 (S.D.N.Y. 2002). A bill of particulars "should not function to disclose evidence, witnesses, and legal theories to be offered by the Government at trial or as a general investigative tool for the defense". United States v. Henry, 861 F.Supp. 1190, 1197 (S.D.N.Y. 1994).

The court "has the discretion to deny a bill of particulars if the information sought by defendant is provided in the indictment or in some acceptable alternate form". United States

v. Barnes, 158 F.3d 662, 665 (2d Cir. 1998). *See* United States v. Messina, 2012 WL 463973, *10 (E.D.N.Y. 2012) ("[i]n determining whether a defendant has shown such necessity, the trial court must examine the totality of the information available to the defendant, including the indictment and general pre-trial discovery"). "Whether to grant a bill of particulars rests within the sound discretion of the district court." United States v. Panza, 750 F.2d 1141, 1148 (2d Cir. 1984).

With this standard in mind, I will address defendant's request for particularization. He seeks identification of "all statements made and/or actions taken by the defendant which the Government intends to allege were false and/or misleading", "effected the outcome of the trial", or "corruptly influenced the trial". Defendant's Omnibus Motion [18], p. 5 of 13 (CM/ECF).

Insofar as the Indictment identifies the eight topics about which defendant allegedly testified falsely and evasively, he has been sufficiently apprised regarding the information he seeks. "Although it may be helpful for the Government to identify by page and line each and every statement made by [defendant] . . . that serves as the basis for the charges . . . it is not necessary for [defendant] to prepare a defense. Indeed, because these counts constitute obstruction of justice counts as opposed to perjury charges, even though the alleged obstruction is based on purportedly false statements, the statements do not need to be set out specifically in the indictment." United States v. Pirk, 267 F. Supp. 3d 392, 405 (W.D.N.Y. 2017). Therefore, this motion is denied.

**B.    Government's Cross-Motion for Reciprocal Discovery**

The government moves for reciprocal discovery pursuant to Rule 16(b). Government's Response [21], p. 12. "Rule 16 . . . imposes reciprocal discovery obligations on defendants." United States v. Smith, 985 F.Supp.2d 506, 522 (S.D.N.Y. 2013). Defendant has not opposed this request. Therefore, the government's motion is granted. "Defendant shall provide such discovery, if any, not later than 30 days prior to trial or such other date as the District Judge may direct." United States v. Sikut, 488 F.Supp.2d 291, 304 (W.D.N.Y. 2007) (emphasis omitted).

The government also seeks advance disclosure pursuant to Fed. R. Evid. 807 of any statements falling under the residual hearsay exception that defendant intends to utilize at trial. Government's Response [21], p. 12. Since there is no opposition to this request, defendant shall comply with the notice provisions of Fed. R. Evid. 807(b).

**CONCLUSION**

For these reasons, the government's cross-motion for discovery (government's Response [21], pp. 12-13) is granted, defendant's motion for a bill of particulars (defendant's Omnibus Motion [18], p. 5 of 13 (CM/ECF)) is denied, and I recommend that defendant's motion to dismiss [16] be denied. Unless otherwise ordered by Judge Vilardo, any objections to this Report, Recommendation and Order must be filed with the clerk of this court by November 28, 2018. Any requests for extension of this deadline must be made to Judge Vilardo. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 59(c)(2) of this Court's Local Rules of Criminal Procedure, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority", and pursuant to Local Rule 59(c)(3), the objections must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objection.

Dated: November 14, 2018

                                           /s/ Jeremiah J. McCarthy
                                           JEREMIAH J. MCCARTHY
                                           United States Magistrate Judge